## In re DIECKERHOFF et al.

### (Circuit Court, S. D. New York. January 12, 1893.)

CUSTOMS DUTIES—CLASSIFICATION—"FEATHER-STITCHED BRAIDS."

So-called "feather-stitched braids," being an article from one quarter to one third of an inch in breadth, woven on a loom, and ornamented with certain patterns, "herring bone" and others, are dutiable as cotton braids, under Schedule I, par. 354, of the tariff act of October 1, 1890, and not as cotton trimmings under Schedule J, par. 373, of said act, as classified by the collector of customs of New York.

### At Law.

This was an appeal by the collector of customs at the port of New York for a review of the decision of the board of United States general appraisers, reversing the decision of the said collector in the classification for duty of certain merchandise imported in the early part of the year 1891, and which was classified for duty by the collector as "cotton trimmings," and duty thereon assessed at 60 per cent. ad valorem, under the provisions of paragraph 373 of the tariff act of October 1, 1890, which contains an enumeration of "trimmings * * * composed of flax, jute, cotton, or other vegetable fiber, or of which these substances, or either of them, or a mixture of any of them, is the component material of chief value, not specially provided for in this act, sixty per centum. ad valorem." The importers protested in the case of each of the entries, claiming that the merchandise was dutiable at only 35 cents per pound, as cotton braids, under Schedule I of said tariff act, (paragraph 354,) or, second, at only 40 per cent. ad valorem, as cotton galloons, under the same schedule and paragraph. which provision, so far as it is material, is as follows: "(354) Cotton cords, braids, boot, shoe, and corset lacings, thirty-five cents per pound." The importers abandoned their contention that the merchandise was galloons, and stood upon their claim that it was braids; and, having appealed to the board of United States general appraisers, pursuant to the provisions of the so-called "Administrative Act of June 10, 1890," produced the testimony of a number of trade witnesses before said board, from whose evidence it appeared that the merchandise was known in trade and commerce on and immediately prior to October 1, 1890, as "feather-stitched braids," and that the articles were not known as "trimmings," or included within the line of goods of that character. It also appeared that braids were sometimes made on looms and sometimes on braiding machines, but that by far the greater proportion was made on looms; and that, whether woven on looms or made on braiding machines, the use was the same,—for covering and binding goods, etc.—and that these braids were not used as trimming articles.

The board of appraisers decided that the merchandise was cotton braids, that it was not commercially known as "trimmings," and sustained the protests of the importers. The collector thereupon by petition procured the return of the board of general appraisers to be filed in the circuit court pursuant to the provisions of the above-mentioned administrative act, and obtained from the court an order to take further testimony before one of the general appraisers as an officer of the court. A number of witnesses were produced before the referee on behalf of the collector and the government, from whose testimony it appeared that the articles in question in this suit were woven with a shuttle on a loom, and that braids were frequently manufactured on braiding machines by an entirely different process from weaving. The witnesses for the government, with the exception of one manufacturer, were persons who bought the merchandise in question for the purpose of using it in the manufacture of ladies' and children's underwear, in which it was used, according to their testimony, to cover up and give a certain finish or ornament to seams in those garments; and that the articles were bought by them as "herring-bone," or "herring-bone trimming." There was some difference in the testimony of these witnesses as to whether these articles were applied to seams merely for the purpose of covering such seams or for giving to them an ornamental effect. This evidence was returned to the circuit

court, and on the trial it was argued on behalf of the collector and the government that a commercial designation, in order to govern the classification, must be widespread and general, and that the testimony offered by the government before the referee in the circuit court had shown that there was no such general designation of these goods as "feather-stitched braids" as would take them out of the collector's classification as "cotton trimmings;" but that, even if they were in reality braids, there was some testimony to show that they were trimmings, and used as such, and that the designation "trimmings," as used in the tariff act, was more specific than "cotton braids," unless the trade meaning of "trimmings" excluded the articles in suit. At the close of the argument the circuit court decided against the contentions of the government, and affirmed the decision of the board of appraisers, delivering the following opinion.

Curie, Smith & Mackie, (D. Ives Mackie, of counsel,) for importers.

Edward Mitchell, U. S. Atty., and James T. Van Rensselaer, Asst. U. S. Atty., for collector and the United States.

COXE, District Judge, (orally.) The question in this case was fairly stated by the district attorney, to be whether or not the importations are "braids" or "trimmings;" whether or not they were commercially known in this market as "braids," at the time of the passage of the tariff act of 1890. I do not understand that it is seriously contended on the part of the district attorney that upon the proof before the board of appraisers, a mistake was made in the finding, that they were commercially known as "braids." If, however, it is so contended, it seems to me that the contention can have no foundation, for the reason that four witnesses, concededly representative importers and large dealers in this city, so testified, and their testimony was not contradicted. So the question before this court is, whether or not the additional evidence now presented is sufficient to warrant the court in overturning the finding of the board. I do not know that any rule of this court has been laid down applicable to such a situation, but it would seem to me that the finding of the board should stand, unless the appellant presents evidence before this court of greater weight, or at least of equal value. I do not think that the appellant has done either; because it is practically conceded that the witnesses produced by him, assuming that their evidence is competent, were not as representative men, under the well-known rule that requires such witnesses to be importers or large dealers, as the four witnesses presented on the part of the importer. In other words, I think that if the evidence now before the court had all been presented to the board of appraisers, their finding would have been justifiable upon the facts. The additional evidence is not sufficient, therefore, to warrant the court in overturning that finding.

The decision of the board of appraisers is affirmed.